J-A04014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GLEN WILLOW PROPERTIES, LLC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| INDUSTRIAL ORCHARDS LAND ASSOCIATES, LP AND MAHMOOD CHOUDHURY D/B/A INDUSTRIAL ORCHARDS ASSOCIATES, LP, | |
| ------------------------------------------------- | |
| ORCHARDS INDUSTRIAL LAND ASSOCIATES, LP, | |
| v. | |
| GLEN WILLOW PROPERTIES, LLC, | |
| ------------------------------------------------- | |
| ORCHARDS INDUSTRIAL LAND ASSOCIATES, LP, | |
| v. | |
| JP MORGAN CHASE BANK, N.A., | |
| v. | |
| GLEN WILLOW PROPERTIES, LLC, | |
| APPEAL OF: JP MORGAN CHASE BANK, N.A., | |
| Appellant | No. 1334 EDA 2016 |

Appeal from the Judgment Entered April 19, 2016
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 07-05467-26-5

| | |
|---|---|
| GLEN WILLOW PROPERTIES, LLC, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |

J-A04014-17

INDUSTRIAL ORCHARDS LAND
ASSOCIATES, LP AND MAHMOOD
CHOUDHURY D/B/A INDUSTRIAL
ORCHARDS LAND ASSOCIATES, LP,

------------------------------------------------

INDUSTRIAL ORCHARDS LAND
ASSOCIATES, LP,

v.

GLEN WILLOW PROPERTIES, LLC,
------------------------------------------------
INDUSTRIAL ORCHARDS LAND
ASSOCIATES, LP,

v.

JP MORGAN CHASE BANK, N.A.,

v.

GLEN WILLOW PROPERTIES, LLC,

APPEAL OF: GLEN WILLOW PROPERTIES,
LLC,

                          Appellant                    No. 1500 EDA 2016

Appeal from the Judgment Entered April 19, 2016
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 07-05467-26-5

BEFORE:  SHOGAN, SOLANO, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED APRIL 24, 2017**

_____

[*]  Retired Senior Judge assigned to the Superior Court.

- 2 -

In these consolidated appeals, Glen Willow Properties, LLC ("Glen Willow") appeals from the entry of judgment in favor of Industrial Orchards Land Associates, LP ("Orchards") and JP Morgan Chase Bank ("JPMC"), and JPMC appeals from the entry of judgment in favor of Orchards. Upon review, we affirm in part and reverse in part.

The trial court thoroughly set forth the factual background of this case in its Pa.R.A.P. 1925(a) opinion. Trial Court Opinion, 7/19/16, at 1–5. In summary, Orchards and Glen Willow executed a land sale agreement ("Contract") on February 8, 2006, whereby Orchards would sell Bucks County Tax Map Parcel 22-057-004 ("Property") to Glen Willow for $5,000,000; Glen Willow intended to develop the Property for the construction of 100 townhouses. The parties executed an escrow agreement the next day, and Glen Willow paid its initial, non-refundable deposit of $150,000 ("Escrow Deposit").

In the Fall of 2006, the parties negotiated an amendment to ¶ 34(C) of the Contract that addressed the period in which Glen Willow was required to obtain development approvals from various government authorities ("Approvals Period"). The proposed amendment would give Glen Willow an option to extend the Approvals Period by twelve months upon a written request and payment of $200,000 to Orchards ("Option"). The amendment would also excuse Glen Willow from providing the $1,000,000 letter of credit ("letter of credit") to Orchards required under ¶ 34(B) of the Contract.

- 3 -

Pursuant to the parties' oral negotiations, Orchards' general partner, Mahmood Choudhury ("Choudhury"), drafted and sent a document that reflected the terms of the proposed amendment to James Luke ("Luke"), an officer of Glen Willow. After some delay, Luke returned a document, signed and dated December 7, 2006 ("Amendment"). Assured by his real estate agent, Sandy Farry, that the Amendment was the same document Choudhury had drafted, Choudhury signed the Amendment without first reviewing it.

Several weeks later, on or around January 30, 2007, Choudhury learned from Glen Willow's real estate agent, Sharon Otto, that the Amendment did not include the twelve-month extension language. In response, Choudhury contacted Glen Willow by email on January 31 and February 2, 2007, declaring the Amendment null and void and notifying Glen Willow that it was in breach of the Contract for failing to deliver the letter of credit. In a responsive letter from counsel dated February 2, 2007, Glen Willow refused to modify the Amendment and to submit the letter of credit. On April 6, 2007, Choudhury sent an email to Glen Willow terminating the Contract.

Despite Choudhury's emails, and in anticipation of the Contract's June 8, 2007 settlement date, Glen Willow attempted to exercise the Option by sending a written request for an extension and a cashier's check for $200,000 to Orchards on June 4, 2007. The cashier's check was issued by

JPMC. Believing that Glen Willow's check was a business check, not a cashier's check as required under the Contract, Choudhury instructed his wife to write VOID on the cashier's check; Choudhury subsequently misplaced the check.

In April of 2008, Glen Willow directed JMPC to stop payment on the unpaid cashier's check; JPMC complied on April 21, 2008. Thirty-three months after voiding the cashier's check, Choudhury requested payment on the cashier's check from JPMC in March of 2010. JPMC refused, having already returned the funds to Glen Willow's account.

Three lawsuits arose from the Contract dispute and unpaid cashier's check. First, on July 9, 2007, Glen Willow sued Orchards for specific performance and indexed a *lis pendens* against the Property; Orchards counterclaimed, seeking a declaratory judgment that the Contract was terminated and requesting liquidated damages. Second, Orchards sued Glen Willow, requesting reformation of the Amendment, a declaration that Glen Willow breached the Contract, and damages. In response, Glen Willow struck the *lis pendens* on February 9, 2011, abandoned its claim for specific performance, terminated the Contract as amended due to Orchards' alleged breach, and requested damages. Third, Orchards sued JPMC for payment on the cashier's check, and JPMC joined Glen Willow seeking indemnification. The three lawsuits were consolidated for trial.

Following a nonjury trial, the trial court entered verdicts for Orchards in all three cases and in favor of JPMC on its indemnification claim against Glen Willow. The trial court awarded Orchards the $150,000 Escrow Deposit and $533,333.33 for the *lis pendens* encumbrance to be paid by Glen Willow and the $200,000 to be paid by JPMC. The trial court granted JPMC's request for indemnification on the $200,000, and awarded it attorneys' fees, and costs to be paid by Glen Willow. Glen Willow and JPMC filed post-trial motions, which the trial court denied. These appeals followed. The parties and the trial court complied with Pa.R.A.P. 1925.

We address Glen Willow's appeal first, wherein it presents the following questions for our consideration:

1. Whether the trial court, being guided by its determinations of [Glen Willow's] "delays and deception" that were either predicated upon errors of law and/or were not supported by competent evidence of record, erred in rendering its verdict in favor of Orchards and against [Glen Willow].

2. Whether even if, in the alternative, this Court were to uphold the trial court's findings of liability in favor of Orchards, it must nevertheless find that the damages awarded against [Glen Willow] were erroneous as a matter of law.

3. Whether the trial court erred as a matter of law in ordering [Glen Willow] to indemnify JPMC.

Glen Willow's Brief at 3 (full capitalization omitted).

We apply the following standard of review to a nonjury trial verdict:

Our appellate role in cases arising from nonjury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of

- 6 -

fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue . . . concerns a question of law, our scope of review is plenary. The trial court's conclusions of law on appeal originating from a non-jury trial "are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts" of the case.

*Allegheny Energy Supply Co., LLC v. Wolf Run Min. Co.*, 53 A.3d 53, 60–61 (Pa. Super. 2012) (quoting *Wyatt Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 564 (Pa. Super. 2009) (citations omitted)).

The trial court entered the following summary of findings:

> We find that problems between Orchards and [Glen Willow] began to develop in the Fall of 2006 after [Glen Willow] received the Zoning Change called for in the Original Contract but failed to deliver the $1,000,000.00 letter of credit required of it. In an attempt to resolve the dispute, Mr. Choudhury, the General Partner in charge of Orchard[s] arranged a meeting with Mr. Luke, one of the then members of [Glen Willow] at the office of [Glen Willow's] zoning attorney, Mr. Marte, who also participated in the meeting. The meeting resulted in an agreement to resolve the dispute by providing [Glen Willow] with an option to extend the time of settlement for one year from the existing June 8, 2007 deadline by paying Orchard[s] an additional $200,000.00 at the time the optional extension was exercised. The agreement also relieved [Glen Willow from] its pre-existing obligation to post the $1,000,000.00 letter of credit.

> Immediately after the meeting in Mr. Marte's office, Mr. Choudhury correctly reduced the agreed upon terms to writing (Exhibit O-2) and submitted it to [Glen Willow] through the offices of Coldwell Banker, where the real estate agents representing both [Glen Willow] (Sharon Otto) and Orchard[s] (Sandra Farry) were located.

When the written agreement was not returned promptly[,] follow-up inquiries were initialed [sic] by Mr. Choudhury and ultimately he was told by Ms. Farry that the Amendment to Agreement of Sale had been signed by [Glen Willow] and delivered to her office. At her request, Mr. Choudhury came to her office and signed the Amendment without the close examination that would have revealed that it had been altered by [Glen Willow] to change the extension from a one year period to an indefinite period.

The delay by [Glen Willow] in executing the agreed upon amendment increased the level of concern that Orchard[s] rightfully had over the sincerity of [Glen Willow's] intentions in the transaction. That concern was greatly magnified when Orchard[s] learned the [Glen Willow] had fraudulently changed the terms of the amendment as indicated above.

From the testimony of Mr. Luke on behalf of [Glen Willow] and considering the lack of testimony of Steven Plofker, the lead member of [Glen Willow], it is apparent that one of three scenarios explain[s] the delay in returning the signed amendment and the fraudulent altering of it. They include that Mr. Luke did it with the full authorization **of and/or at** the direction of Mr. Plofker, that Mr. Plofker did it or had it done and instructed Mr. Luke to refrain from letting anyone know it had been done or that Mr. Plofker did it or had it done and failed to inform even Mr. Luke that it had been done. In the latter of those scenarios it is possible that Mr. Luke did not discover the change or that he did discover it but chose not to reveal it to Orchard[s]. For purposes of the outcome of this case[,] which scenario took place is not important. All had the intended end result of getting Orchard[s] to sign a written document with the belief that it complied with the agreed upon terms when it did not.

The fact that the written amendment did not contain the agreed upon terms is not disputed in this case by [Glen Willow]. However, despite being caught in their deception and acknowledging the "mistake", [Glen Willow] refused to correct the amendment. Orchard[s] had made it clear to [Glen Willow] that the "mistake" needed to be corrected or [Glen Willow] would not be entitled to the benefit of not having to post the $1,000,000.00 letter of credit as called for in the Original [Contract].

Because of [Glen Willow's] aforesaid delays and deception, Orchard[s] was now rightfully extremely concerned about [Glen Willow's] intentions and trustworthiness. Therefore, when [Glen Willow] requested Orchard[s] to allow [Glen Willow] to apply for a PennDot Highway Occupancy Permit with a recordable waiver signed by Orchard[s] at a time when the Permit was not even needed, Orchard[s] rightfully suggested that either the permit application be delayed or that instead the permit be applied for in Orchard[s'] name with the understanding that it would be transferred to [Glen Willow] when and if the transaction went to settlement. [Glen Willow's] contention that Orchard[s'] reluctance to submit the permit application as originally requested by [Glen Willow] somehow was a violation of Orchard[s'] contractual obligations and/or caused any concerns on [Glen Willow's] part is simply not credible.

Even though [Glen Willow] obtained preliminary land development plan approval in March of 2007 and could have immediately taken steps to submit the application for final approval, [Glen Willow] instead chose to do nothing further until its June attempt to exercise the option to extend the settlement deadline by one year.

Summary of Findings and Verdict, 9/18/15, at 2–4 (emphasis in original).

Glen Willow challenges the trial court's conclusion that Glen Willow was liable to Orchards for breach of the Contract. Glen Willow's Brief at 28. According to Glen Willow, the trial court's finding that Glen Willow engaged in fraud regarding the Approvals Period was not supported by the record because there was no testimony or documents establishing that Glen Willow "made any misrepresentations as to what Choudhury was signing or made any inducements in this regard." *Id.* at 32. Glen Willow also disputes the trial court's finding that Orchards "justifiably relied upon any alleged fraud on the part of Glen Willow" because Choudhury "admittedly failed to read the Amendment before signing it." *Id.* at 35. Glen Willow concludes that

the trial court "could not have enforced any contract between the parties and could not have determined if either had performed/not performed . . . due to the uncorrected mutual mistake" regarding the Option. *Id.* at 37.

Initially, we address the fraud underpinnings of this case. "Under Pennsylvania law, a cause of action framed as a tort but reliant upon contractual obligations will be analyzed to determine whether the cause of action properly lies in tort or contract." *Autochoice Unlimited, Inc. v. Avangard Auto Fin., Inc.*, 9 A.3d 1207, 1212 (Pa. Super. 2010). "In general, courts are cautious about permitting tort recovery based on contractual breaches. In keeping with this principle, this Court has recognized the 'gist of the action' doctrine, which operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims." *Hart v. Arnold*, 884 A.2d 316, 339 (Pa. Super. 2005). The doctrine bars tort claims:

> (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Id.* at 340 (quoting *eToll, Inc. v. Elias/Savion Adver.*, 811 A.2d 10, 19 (Pa. Super. 2002)). "The question of whether the gist of the action doctrine applies is an issue of law subject to plenary review." *eToll, Inc.*, 811 A.2d at 15.

In the case *sub judice*, Orchards alleged fraud in connection with the Contract as amended in its new matter to Glen Willow's complaint for specific performance, stating, "[Glen Willow] obtained [Orchards'] signature on [the Amendment] by fraudulent means." Answer, New Matter, and Counterclaim, 8/29/07, at ¶ 30. However, in its own complaint against Glen Willow, Orchards raised claims of breach of contract and unjust enrichment, but not fraud. Complaint, 5/4/10, at ¶¶ 19–29.

Our thorough review of the record indicates that the subject matter of the underlying litigation was the Contract as amended. It is clear to this Court that the rights Orchards seeks to vindicate specifically arise from its contractual relationship to Glen Willow and not from a general societal policy embodied by the law of torts. We conclude, therefore, that Orchards' claim is properly viewed as an action on the Contract as amended and that its allegations of fraud are barred by the gist-of-the-action doctrine. Thus, we further conclude that the trial court erred in its application of the law to the facts by making fraud-based conclusions in this contract action. **Accord Allegheny Energy Supply**, 53 A.3d at 60–61 (instructing that conclusions of law on appeal from a nonjury trial "are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts" of the case).

Reviewing this controversy from the proper legal perspective, the following principles govern our interpretation of a contract:

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.

*Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 408 (Pa. Super. 2010) (internal quotation marks, citations, and modifications omitted).

We must view the evidence of record in a light most favorable to Orchards, the verdict winner. In doing so, we conclude the following findings of fact by the trial court are supported by competent evidence of record: Glen Willow received the Zoning Change called for in the Contract, but it failed to deliver the letter of credit required of it. The parties negotiated an amendment, giving Glen Willow the Option and waiving the letter-of-credit obligation. Although the Amendment did not include the twelve-month-extension language, both parties signed it. The provision at issue reads as follows:

> Notwithstanding the terms of the Contract, the Approval Period, as defined in Paragraph 34(c) of the Contract will be extended automatically on the written request of the Buyer, provided it is accompanied with a payment in the amount of $200,000.00, payable in certified funds or by wire transfer, on or before June 8, 2007. No new extensions will be granted. Paragraph 35(5) is hereby being superseded by this Amendment. This extension will be valid only if payment of $200,000, as stated hereinabove is received and acknowledged by the Seller.

Amendment, 12/4/06, at ¶ 2. Pursuant to the Amendment, Glen Willow attempted to exercise the Option by sending a written request for an

extension and a $200,000 cashier's check to Orchards on June 4, 2007. Orchards received the check but voided it. Orchards subsequently demanded the letter of credit and gave Glen Willow additional time in which to deliver it. When Glen Willow did not provide the letter of credit, Orchards terminated the Contract. Glen Willow requested a stop payment on the cashier's check, which JPMC executed. Despite nullifying the Amendment, denying Glen Willow an extension of the Approvals Period, and terminating the Contract, Orchards requested payment on the cashier's check from JPMC, which JPMC refused.

These facts give rise to the following conclusions of law: Glen Willow's initial failure to deliver the letter of credit constituted a breach of the Contract. Orchards did not acknowledge the $200,000 cashier's check as payment for an extension under the Amendment, as evidenced by Choudhury having the cashier's check marked "void" and his subsequent notices to Glen Willow. Pursuant to ¶ 2 of the Amendment, therefore, Glen Willow did not obtain an extension of the Approvals Period and remained in breach of the Contract. Despite Orchards' renewed demand for the letter of credit, Glen Willow failed to deliver the letter of credit within the sixty-day

cure period under ¶ 16 of the Contract[1] and the additional time afforded by Orchards through Choudhury's emails. Based on the foregoing, we discern no error in the trial court's ultimate conclusion that Glen Willow breached the Contract by failing to deliver the letter of credit.

Glen Willow's second issue raises an alternative argument that, even if the trial court's conclusion that Glen Willow breached the Contract was correct, its award of damages was "erroneous as a matter of law." Glen Willow's Brief at 38. Glen Willow argues that Orchards' sole remedy under ¶ 17 of the Contract was liquidated damages, *i.e.*, the Escrow Deposit. *Id.* at 39. Therefore, Glen Willow contends, the trial court erred in reforming the Amendment, extending the Approvals Period to September 18, 2015, "more than *eight years* after the expiration of the originally intended one-year extension of the Approvals Period," and awarding $533,333.33—which was the uncontested value of the Approvals Period extended and pro-rated for the actual length of time the Property was subject to Glen Willow's *lis*

---

[1] This provision reads as follows:

> 16. **Correcting Defects**. There shall be no event of default or right to terminate this Contract unless sixty (60) days prior written notice is given to the other party in which to cure or correct such defect or case for termination and can be terminated by either party with written notice if the written notice does not take place within the 60-day period.

Contract for Buy/Sale of Real Estate, 2/8/06, at ¶ 16.

*pendens*.  ***Id.*** at 36, 39 (emphasis in original).[2]  We agree with Glen Willow that the trial court's award of additional damages to Orchards was erroneous.

> In a breach of contract action, damages are awarded to compensate the injured party for loss suffered due to the breach. The purpose of damages is to put the plaintiff in the position he or she would have been in but for the breach.

***Empire Properties, Inc. v. Equireal, Inc.***, 674 A.2d 297, 304–305 (Pa. Super. 1996) (internal citations omitted).

> Here, the Contract expressly provides for damages as follows:

> 17.  **Termination of Contract.**  If this Contract is legally and rightfully terminated by the Buyer for reasons permitted hereunder, the Escrow Deposit and the Letter of Credit shall be refunded to the Buyer, without interest.  **If the Contract is terminated by the Seller because of Buyer's default, the Escrow Deposit shall be retained by the Seller as liquidated damages**.  In the event Seller defaults in its obligations hereunder, Buyer shall have the right to seek specific performance.

Contact for Buy/Sale of Real Estate, 2/8/06, at ¶ 17 (emphasis in text supplied).  Pursuant to ¶ 17, the trial court's award of the Escrow Deposit to Orchards was proper.

---

[2]  Orchards argues that this claim is waived because it does not appear in Glen Willow's Pa.R.C.P. 1925(b) statement.  Orchards' Brief at 20.  Our review of the record confirms that Glen Willow's challenge to reformation of the Amendment was not expressly included in its Rule 1925(b) statement; however, we find that this claim is fairly subsumed in Glen Willow's arguments related to the damages awarded to Orchards.

The trial court based its award of additional damages to Orchards on Glen Willow's alleged fraud and the *lis pendens*:

> The fraudulent Amendment that spurred this litigation was entered on or around December 4, 2006 with an effective date of June 8, 2007. The *lis pendens* was lifted on February 9, 2011. See Praecipe to Strike *Lis Pendens* p. 1. It is undisputed that prior to the Amendment's execution, both parties had orally agreed that the cost of a one-year extension on the line of credit requirement was $200,000. Therefore, we reasoned that Orchard[s] should recover $200,000 for every year from the effective date of the Amendment until the time the *lis pendens* was lifted. Orchard[s] was awarded $200,000 per year pro rated for the period from June 8, 2007 through February 9, 2011, which totaled $733,333.33.
>
> Damages we awarded to Orchard[s] from Glen Willow are the direct result of Glen Willow's conduct in trying to fraudulently obtain an indefinite extension of the original Contract's time limit. The original Contract required Glen Willow to post a one million dollar letter of credit once it received zoning approval. Having received such approval[,] Glen Willow engaged in a course of conduct to avoid that requirement by instead agreeing to pay $200,000.00 of [sic] a <u>one-year</u> extension. It then fraudulently got Orchard[s'] signature on an Amendment that gave it an unlimited extension. When caught in its fraud, Glen Willow began a course of conduct that attempted to paint Orchard[s] as the defaulting party. In determining how to calculate damages, we granted Orchard[s] the benefit of the bargain it and Glen Willow actually agreed to when the terms of the Amendment were negotiated. We could have found that the Amendment was null and void as Orchard[s] requested and awarded Orchard[s] the one million dollars they would have received had Glen Willow posted the letter of credit called for by the original Contract and then defaulted. We chose not to do so because we felt that considering the facts as we found them, the award we made was the most appropriate since it put the parties in the position they would have been had the terms actually agreed upon when the Amendment was negotiated were implemented.

Trial Court Opinion, 7/19/16, at 17–18 (emphasis in original).

- 16 -

Upon review, we conclude that the trial court's award of damages in excess of the Escrow Deposit was erroneous for several reasons. First, upon Orchards' termination of the Contract, it was entitled to retain **only** the Escrow Deposit as liquidated damages. Contact for Buy/Sale of Real Estate, 2/8/06, at ¶ 17. Contrary to the trial court's assertion, therefore, it could not have awarded Orchards one million dollars under the letter of credit. Second, Glen Willow did not successfully exercise the Option because Orchards voided the cashier's check and nullified the Amendment. Stipulation of Agreed-Upon Facts, 9/11/15, at Exhibit B. Therefore, Glen Willow did not owe—and Orchards was not entitled to—$200,000. Third, the trial court's endorsement of Orchards' fraud allegations as a basis for damages in this action for breach of contract violates the gist-of-the-action doctrine.

Finally, the trial court's reliance on the *lis pendens* as a basis for reforming the Amendment and awarding additional damages conflicts with our recent decision in ***In Re: Foremost Industries, Inc. v. GLD Foremost Holdings, LLC***, ____ A.3d ____, 2017 PA Super 37 (Pa. Super. filed February 16, 2017). The appeal of ***Foremost Industries*** arose out of "the lower court's denial of GLD's emergency petition to strike the *lis pendens* on properties owned by Foremost Industries." ***Id.*** at *6. We explained the law of *lis pendens* as follows:

> *Lis pendens* is construed to be the jurisdiction, power, or control which courts acquire over property involved in a suit, pending

- 17 -

the continuance of the action, and until final judgment. *Lis pendens* may be imposed when the property is subject to litigation and that any interest acquired by the third party will be subject to the result of the litigation.

The doctrine of *lis pendens* is based in common law and equity jurisprudence, rather than in statute, and is wholly subject to equitable principles. The doctrine does not establish an actual lien on the affected property. Its purpose is merely to give notice to third persons that the real estate is subject to litigation and that any interest which they may acquire in the real estate will be subject to the result of the action.

If title to the property is not subject to the result of the litigation, then there is no reason to provide notice to a third party about the litigation. To impose *lis pendens* in such a case would prove to be an arbitrary application of the doctrine and, equity can and should refuse to give it effect, and, under its power to remove a cloud on title can and should cancel a notice of *lis pendens* which might otherwise exist.

Thus, a two-part analysis emerges from the common law that the courts should apply to determine whether exerting the court's control over real property is appropriate. The first step is to ascertain whether title is at issue in the pending litigation. The second step is an equitable inquiry:

> The lower court must balance the equities to determine whether the application of the doctrine is harsh or arbitrary and whether the cancellation of the *lis pendens* would result in prejudice to the non-petitioning party.

*Id.* at *6–7 (internal quotation marks and citations omitted).

Here, the underlying action does not involve a dispute over title to the Property, but rather a contract dispute. Technically, therefore, Glen Willow had "no reason to provide notice to a third party about the litigation." *Foremost Industries*, 2017 PA Super 37, at *6. The second step of the *lis pendens* analysis is informed by the record. Glen Willow sued Orchards for

- 18 -

specific performance of the Contract and recorded a *lis pendens*. Orchards filed suit against Glen Willow for breaching the Contract. Glen Willow cancelled the *lis pendens* on February 9, 2011, when it withdrew its action for specific performance. Prior to Glen Willow's cancellation of the *lis pendens*, Orchards did not move to strike it, nor has Orchards claimed the loss of any potential sale of the Property as a result of the *lis pendens*. The Contract limits Orchards' damages for Glen Willow's breach to the Escrow Deposit. Agreement for Buy/Sale of Real Property, 2/8/06, at ¶ 17. In light of this record, we discern no basis for the trial court's equitable award of damages to Orchards based on the *lis pendens*.

In sum, we conclude that the trial court's award of the Escrow Deposit to Orchards was authorized under ¶ 17 of the Contract. Contrarily, the trial court erred in awarding $733,333.33 to Orchards by reforming the nullified Amendment and using the *lis pendens* to calculate damages. Thus, we reverse the entry of judgment in favor of Orchards and against Glen Willow for $733,333.33 and the entry of judgment in favor of Orchards against JPMC for $200,000.[3]

Glen Willow's final issue challenges the trial court's ruling that Glen Willow must indemnify JPMC. Glen Willow's Brief at 40. On JPMC's

---

[3] In light of this holding, JPMC is not liable to Orchards for the unpaid cashier's check. Therefore, we need not address the challenges raised in JPMC's appeal to the trial court's rejection of JPMC's defenses. JPMC's Brief at 10–11.

indemnification claim, the trial court awarded JPMC its defense costs of $161,084.99 through August 31, 2015, and the $200,000 payable to Orchards in the event JPMC paid that amount and was not immediately reimbursed by Glen Willow. Summary of Findings and Verdict, 9/18/15 at 5. Subsequently, the trial court awarded JPMC an additional $47,088.34 in post-August 31, 2015 attorneys' fees and expenses. Order, 3/22/16.

The trial court explained its two-part indemnification ruling as follows:

> We were further reasonable and logical when we granted JPMC's request for indemnification and attorney fees against [Glen Willow]. At trial, we found JPMC's argument regarding the indemnification claims convincing. JPMC stated that indemnification is provided for both in its contract with [Glen Willow] and the UCC [Uniform Commercial Code]. In the agreement Plofker signed for [Glen Willow] when he opened [Glen Willow's] account with JPMC, he agreed to indemnify the bank for any claims brought against it because of services provided to [Glen Willow] as a customer. N.T. 9/14/2015, p. 187. The processing of the stop payment request was clearly a service provided to [Glen Willow] as a customer. Further, § 3312 of the UCC provides protection to a bank if a cashier's check has been outstanding for longer than ninety days. N.T. 9/14/2015, p. 189. Finally, counsel for JPMC submitted detailed documentation regarding its costs incurred in litigating this case. N.T. 9/14/2015, p. 190. See Post-Trial Petition of JPMC for an Award Against [Glen Willow] of Additional Legal Fees & Expenses, 1/14/2016. The undersigned did not abuse its discretion in awarding JPMC $208,173.33 in fees and expenses[.]

Trial Court Opinion, 7/19/16, at 18.

In response to the trial court's indemnification decision on the cashier's check, Glen Willow relies on the rule of contract interpretation that specific language controls general language, and it directs our attention to the Stop

Payment Affidavit executed by Plofker. Glen Willow's Brief at 41 (citing

***Southwestern Energy Production Co. v. Forest Resources, LLC***, 83

A.3d 177 (Pa. Super. 2013)); Stipulation of Agreed-Upon Facts, 9/11/15, at

Exhibit E. The Stop Payment Affidavit provision reads as follows:

> **THAT if the check was issued not more than 90 days ago**, in consideration of your issuing a duplicate of the said check/crediting account number _____, the undersigned agrees to indemnify [JPMC] against any loss, damages, suits, counsel fees, expenses and liabilities which it may incur in connection with any claim which may be made with respect to the original check or duplicate check in connection with the honoring or declining to honor whether through inadvertence or otherwise either of the said checks, and further agrees to promptly surrender the original check to [JPMC] for cancellation if located.

***Id.*** at 2 (emphasis in original). According to Glen Willow:

> JPMC would only be indemnified if the check on which a stop-payment was requested was issued ***less than*** 90 days from the request to stop payment. Here, the Bank Check was issued well beyond 90 days from the request to stop payment and, as such, there was no duty on the part of [Glen Willow] to indemnify JPMC with respect to it.

Glen Willow's Brief at 42 (emphasis in original). Additionally, Glen Willow

asserts "there is no provision in section 3312 of the Uniform Commercial

Code, 13 Pa. C.S.A. § 3312 ("Lost, destroyed or stolen cashier's check,

teller's check or certified check"), that even mentions the word

'indemnification' or any variation or idea of it." ***Id.*** at 42.

In contrast, JPMC argues that the specific provision in the Stop

Payment Affidavit does not nullify, supersede, abrogate, or conflict with the

general indemnification provision in the parties' agreement. JPMC's Brief at

7−10 (citations omitted). JPMC further argues, "The provision in the Stop Payment Affidavit does not apply because the check had been outstanding for more than 90 days." *Id.* at 10−13 (citing 13 Pa.C.S. § 3312(b)(2)).

Upon review of the parties' arguments, the law, and the certified record, we reverse the trial court's indemnification ruling in part and affirm in part. As explained above, Orchards did not acknowledge the cashier's check as payment under the Amendment, and it nullified the Amendment; therefore, there was no extension of the Approvals Period. Consequently, Glen Willow was not required to pay $200,000; Orchards was not entitled to payment on the cashier's check; JPMC was not liable to Orchards for nonpayment of the cashier's check; and Glen Willow was not required to indemnify JPMC for the $200,000. Based on the foregoing conclusions of law, we reverse the trial court's order directing Glen Willow to indemnify JPMC.

As for the second component of the trial court's indemnification ruling, Glen Willow does not mount any challenge to the order requiring it to indemnify JPMC for attorneys' fees and costs. Glen Willow's Brief at 40−42. Nor could it as the record supports the trial court's findings, and we discern no error of law in its conclusion. Specifically, the record confirms that, as a customer of JPMC, Glen Willow agreed to the General Terms for Accounts and Services ("General Terms"). Stipulation of Agreed-Upon Facts, 9/11/15, at Exhibit D. The General Terms contain an indemnification provision:

> I [Glen Willow] agree to indemnify and hold you [JPMC] and all Morgan Affiliates harmless from any claim, loss, liability, or expense, including, without limitation, collection costs, reproduction and search costs and **the reasonable fees and disbursements of counsel** and other advisers incurred by you or them (i) in rendering services hereunder; (ii) in connection with any breach of this Agreement by me; or (iii) **in connection with claims, suits or proceedings brought against you by third parties as a result of your providing products and services to me**, except any claim, loss, or liability that results from your gross negligence or willful misconduct.

*Id.* at ¶ 17 (emphases supplied). Under the plain language of this provision, Glen Willow unambiguously agreed to indemnify JPMC for attorneys' fees and costs incurred in connection with Orchards' third-party suit against JPMC on the cashier's check. Thus, we affirm the trial court's entry of judgment in favor of JPMC and against Glen Willow for attorneys' fees and costs.

Judgment in favor of Orchards and against Glen Willow for $150,000 affirmed; judgment in favor of Orchards and against Glen Willow for $533,333.33 reversed; judgment in favor of Orchards and against JPMC for $200,000 reversed; judgment in favor of JPMC and against Glen Willow for attorneys' fees and costs affirmed; judgment in favor of JPMC and against Glen Willow for indemnification of $200,000 reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/2017

- 23 -